CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 09 2019

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **AMY R.,** | ) | |
| | ) | |
| **Plaintiff** | ) | **Civil Action No. 7:18-CV-00272** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ANDREW SAUL, Commissioner of** | ) | |
| **Social Security,** | ) | **By: Michael F. Urbanski** |
| | ) | **Chief United States District Judge** |
| | ) | |
| **Defendant** | ) | |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on May 24, 2019, recommending that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Amy R. ("Amy") has filed objections to the report and this matter is now ripe for the court's consideration.

### I. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's

attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir. 2010); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## III. Plaintiff's Objections[2]

In her objections to the R&R, Amy asserts that the magistrate judge erred when he made the following findings: (1) that substantial evidence supported the administrative law judge's ("ALJ") assessment of Amy's physical residual functional capacity ("RFC"); (2) that substantial evidence supported the ALJ's assessment of Amy's mental RFC; (3) that the ALJ

[2] Detailed facts about Amy's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 23) and in the administrative transcript (ECF No. 9) and will not be repeated here.

properly assessed her subjective allegations of impairment; and (4) that the Appeals Council properly concluded that new evidence she submitted did not warrant remand.

**A. Physical RFC Assessment**

Amy suffers from several physical and mental impairments. The ALJ found that her severe impairments include obesity, asthma, chronic obstructive pulmonary disease (COPD); restrictive lung disease; obstructive sleep apnea, trigeminal neuralgia, bipolar disorder, posttraumatic stress disorder, anxiety disorder, attention deficit disorder, and diabetes mellitus.

When assessing a claimant's RFC, an ALJ should follow the process described in Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016).

> The process for assessing RFC is set out in Social Security Ruling 96-8p. See [Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)]. Under that ruling, the "'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." Id. (quoting SSR 96-8P, 61 Fed. Reg. at 34,475). Only after such a function-by-function analysis may an ALJ express RFC "'in terms of the exertional levels of work.'" Id. (quoting SSR 96-8P, 61 Fed. Reg. at 34,475). We have explained that expressing RFC before analyzing the claimant's limitations function by function creates the danger that "'the adjudicator [will] overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" Id. at 636 (quoting SSR 96-8p, 61 Fed. Reg. at 34,476).

Monroe, 826 F.3d at 187-188. In addition, the ALJ's assessment must include a narrative discussion of how the evidence supports each conclusion, citing medical facts and nonmedical evidence, and "'must build an accurate and logical bridge from the evidence to his conclusion.'" Id. at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).[3]

[3] In Clifford, 227 F.3d at 872, the court observed that it is not enough for an ALJ to state in a conclusory manner that a claimant's testimony regarding limitations placed on his daily activities was unsupported by the medical evidence. Rather, an ALJ must articulate "some legitimate reason for his decision" and "build an accurate and logical bridge from the evidence to his conclusion."

Regarding Amy's physical RFC, the ALJ found that she could perform light work except that she could only occasionally climb ramps and stairs, balance, kneel, crawl, stoop, and crouch, would need to avoid even moderate exposure to extreme temperatures, excess humidity, and pulmonary irritants; would need to avoid all exposure to hazardous machinery, unprotected heights, and working on vibrating surfaces, and could never climb ladders, ropes, or scaffolds. The magistrate judge concluded that the physical RFC assessed by the ALJ was supported by substantial evidence.

In her application for benefits, Amy asserted that she suffered from mixed connective tissue disease. R. 564. The ALJ found that she did not have mixed connective tissue disease, because one doctor had found that she had normal serologies and did not have features of rheumatic disease, R. 706, and another doctor found that she did not have the typical hallmarks of connective tissue disease on examination. R. 908. Amy argued to the magistrate judge that three doctors had assessed her with either mixed connective tissue disease or mixed collagen vascular disease. The magistrate judge found that the record contained no diagnosis from an objective medical source and that there were multiple mentions in the record that she did not have the disease, and therefore the ALJ's conclusion was supported by substantial evidence.

In her objections to the R&R, Amy argues that both the ALJ and the magistrate judge ignored two sources in the record who diagnosed her with mixed connective tissue disease. However, the record shows that rather than a doctor diagnosing her with the disease, Amy reported to these sources that she had mixed connective tissue disease. R. 734, 737, 937. There is no objective evidence in the record confirming the disease. In addition, Amy has not shown

what effect, if any, a diagnosis of mixed connective tissue disease would have on her physical RFC.

Amy also objects to the ALJ's determination that her pulmonary impairments did not meet a or equal a listing for chronic pulmonary disorders, and in particular listing 3.02 (chronic respiratory disorders due to any cause except cystic fibrosis) See 20 C.F.R. Part 404, Subpart P, App. 1, § 3.02. To meet the listing under 3.02, a person of Amy's height and age must have an $FEV_1$ less than or equal to 1.35 or an FVC equal or less than 1.6 post bronchodilator.[4] Amy's $FEV_1$ was 1.85 and post-bronchodilator, it was 1.37. Her FVC was 2.64 and post bronchodilator it was 2.65. Based on this objective evidence, the ALJ concluded that Amy's asthma, COPD, and restrictive lung disease did not meet or equal a listing for 3.02. R. 119-120.

Amy argued to the magistrate judge that because she was close to meeting the $FEV_1$ value, that the ALJ should have given greater consideration to the possibility that her impairments in combination are medically equivalent to the requirements of a listed impairment. She also argued that because the $FEV_1$ value was near listing-level severity that the ALJ should have found additional limitations in her RFC.

The magistrate judge found that substantial evidence supported the ALJ's conclusion that Amy's impairments, either alone or in combination, did not meet listing 3.02. The magistrate judge also pointed out that the ALJ accounted for Amy's respiratory impairments in the RFC by finding that she would need to avoid even moderate exposure to extreme

[4] "$FEV_1$" and "FVC" are measures of how well a person moves air into and out of the lungs. 20 C.F.R. Part 404, Subpart P, App. 1, § 3.00E.

temperatures, excess humidity, and pulmonary irritants. In addition, the magistrate judge noted that Amy did not indicate what additional restrictions she would require because of her impairments. Thus, he found that the ALJ's conclusions regarding Amy's pulmonary impairments were supported by substantial evidence.

Amy objects that the magistrate judge did not consider the arguments she made regarding her pulmonary impairments. However, a review of her brief and the R&R indicates that all her arguments were addressed. Amy then reiterates the argument she made to the magistrate judge that because she was close to listing level severity for chronic respiratory disorders, the ALJ should have assessed more RFC limitations. This argument asks the court to re-weigh the evidence presented to the ALJ, which the court is not at liberty to do.

For the reasons stated, the court finds that substantial evidence supports the ALJ's determination regarding Amy's physical RFC. Her objections to the contrary are **OVERRULED.**

**B. Mental RFC Assessment**

When assessing the severity of Amy's mental impairments, the ALJ found that she had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing herself. R. 120-121. Later in his analysis, with regard to Amy's mental RFC, the ALJ found that she could concentrate, attend, and persist sufficiently to understand, remember, and carry out simple instructions in repetitive unskilled work that involves occasional interactions with the general public.

Amy argued to the magistrate judge that the ALJ failed to adequately discuss her mental RFC and that the limitations given did not adequately address her impairments. More specifically, she argued that the ALJ failed to properly consider her moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace.[5] She also argued that the ALJ failed to assess her ability to sustain work over an eight-hour workday. In addition, she asserted that the hypothetical question presented to the vocational expert was flawed.

**1. Ability to Sustain Work**

In Mascio, the Fourth Circuit found that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work[,]'" because the ability to perform simple tasks differs from the ability to stay on task. Mascio, 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The court remanded the case to see if the ALJ could explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in her RFC. "For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert." Id.

In Amy's case, the magistrate judge concluded that substantial evidence supported the ALJ's determination that despite her limitations in concentration, persistence, and pace, she would be able concentrate, attend, and persist sufficiently to understand, remember, and carry

[5] The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpt. P, App. 1. §12.00(C)(3).

out simple instructions in repetitive, unskilled work. The ALJ thoroughly reviewed Amy's mental health records, acknowledged her subjective complaints, and cited to mental health records from September 2013 through December 2016. Those records showed Amy was regularly reported to be oriented with no impairment, had good judgment and insight, had fair concentration, and no impairment of memory. The magistrate judge found that the ALJ's thorough review of the evidence allowed for meaningful review of the RFC and that it was supported by substantial evidence.

Amy objects that the magistrate judge failed to acknowledge that the ALJ did not make a finding that she is able to sustain work activity over an eight-hour workday as is required by Masico, and Rice v. Comm'r, Soc. Sec. Adm., No. SAG-16-2582, 2017 WL 2274947 (D. Md. 2017). However, this case is not like Mascio, where the ALJ failed to explain why the claimant's moderate impairment in concentration, persistence, or pace did not affect Mascio's ability to work. Here, the ALJ summarized Amy's mental health records and her subjective complaints. While her examinations often showed she was experiencing difficulties, i.e., tense motor behavior, labile affect, depressed and anxious mood, ruminative and obsessive thought processes, they also consistently showed that she had fair concentration, no impairment of memory, and good insight and judgment. R. 127-128. The ALJ concluded that findings on mental status examinations revealed no impairment of memory, normal speech, normal knowledge, fair to good judgment and insight, and fair concentration. In addition, despite her conditions, she maintained good activities of daily living, reporting that she lived independently, did household chores, drove, shopped in stores, did laundry, cooked, and cared for her dog, all of which suggested a greater functional capacity than she alleged. R. 129.

The court finds that the although the ALJ did not specifically address Amy's ability to sustain work for an eight-hour day, the court is not "left to guess about how the ALJ arrived at [her] conclusions." Mascio, 780 F.3d at 637. The ALJ assessed Amy's mental capacities on a function-by-function basis, found she had moderate difficulties in two areas, considered all the evidence of her mental impairments, and adjusted her RFC accordingly. The ALJ's finding that Amy would be able to concentrate, attend, and persist sufficiently to understand, remember and carry out simple instructions in repetitive unskilled work addresses her ability to sustain work for an eight-hour workday and is sufficiently supported under Mascio. Therefore, Amy's objection to this finding is **OVERRULED**.

**2. Social Interactions**

The ALJ found that Amy would be limited to occasional interactions with the general public. Amy argued to the magistrate judge that the ALJ did not explain how her moderate limitation in interacting with others is accommodated by limiting her to occasional interaction with the public. The magistrate judge found that the ALJ accommodated Amy's social function limitations in the RFC and provided a full explanation in her decision, because she described Amy's anxious and depressive symptoms and also noted that Amy's providers regularly reported her to be cooperative and able to shop in stores.

Amy objects that the R&R did not address why her moderate limitation in interacting with others did not result in any limitations in the RFC regarding co-workers or supervisors. This argument asks the court to substitute its judgment for that of the ALJ and find additional limitations, which is not a valid objection. The court is limited to determining whether substantial evidence supports the limitation imposed and finds that it does. The ALJ cited

mental health records where Amy was described as cooperative with an appropriate affect, could remain focused on conversation, and was able to answer questions. She interacted with the public by shopping in stores. Amy's objection that the ALJ should have found additional limitations in her ability to interact with others is **OVERRULED**.

**3. Hypothetical Questions**

Amy also argues that the ALJ failed to pose a proper hypothetical question to the vocational expert because the question did not address the moderate limitations discussed above. However, the hearing transcript shows that the ALJ included the limitations regarding Amy that he recognized in his RFC. R. 402. Moreover, Amy's attorney had an opportunity to ask the vocational expert questions and declined to do so. R. 404. "[A]ny possible defects in an ALJ's hypothetical are cured when the plaintiff's attorney is given an opportunity to pose questions to the VE." Smith v. Astrue, No. 2:11-CV-025-MR-DCK, 2012 WL 3191296 (W.D.N.C. 2012) (citing Shively v. Heckler, 739 F.2d 987, 990-91 (4th Cir. 1984)).

Based on the foregoing, the court finds that the magistrate judge properly assessed the ALJ's decision regarding Amy's mental RFC under SSR 96-8P and relevant case law, and also finds that the ALJ's conclusion regarding Amy's mental RFC is supported by substantial evidence. Accordingly, Amy's objections to the magistrate judge's conclusions are **OVERRULED**.

**C. Amy's Subjective Allegations**

In her brief before the magistrate judge, Amy argued that the ALJ's assessment of her subjective allegations was not supported by substantial evidence. The magistrate judge found that the ALJ outlined in great detail Amy's hearing testimony and provided a comprehensive

review of the medical record. The ALJ concluded that the evidence as a whole did not support a finding of disability because Amy received only conservative treatments for her conditions, no physician had recommended a higher level of care, findings on physical examination revealed limited abnormalities, and she maintained good activities of daily living. The magistrate judge concluded that the ALJ's assessment was supported by substantial evidence.

Amy objects that the ALJ failed to explain how Amy's daily activities establish that she can perform substantial gainful work activities on a sustained basis over the course of an eight-hour workday. She claims that the magistrate judge attempts to build the "logical bridge" that the ALJ failed to build. See Clifford, 227 F.3d at 872.

As set forth above, the ALJ explained that he discounted Amy's account of the severity of her impairments because they were inconsistent with other evidence in the record and that explanation is a legitimate reason to discount her subjective complaints. See Hines v. Barnhart, 453 F.3d 559, 565 n. 3 (4th Cir. 2006) (finding subjective allegations of pain need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment) (citing Craig v. Chater, 76 F.3d 585, 598 (4th Cir. 1996)); see also Beavers v. Colvin, No. 5:13-CV-494-D, 2014 WL 4443291, *9 (E.D. N.C. 2014) (citing Mickles v. Shalala, 29 F.3d 918, 929 (4th Cir. 1994)) (finding that ALJ may consider inconsistencies between a claimant's testimony and the evidence of record). Also, the ALJ's findings that Amy lives independently and maintains good activities of daily living supports the conclusion that she was not as debilitated by her impairments as she alleges.

The magistrate judge correctly found that the ALJ provided a clear explanation for why he found Amy able to do light work with additional limitations even after considering her subjective complaints. Accordingly, Amy's objection that he failed to do so is **OVERRULED**.

**D. Post-Hearing Evidence**

In Wilkins v. Sec'y Dep't Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991), the Fourth Circuit held that "The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)). In addition, there must also be a reasonable probability that the additional evidence would change the outcome of the decision. 20 C.F.R. § 404.970.

After the ALJ hearing, Amy submitted additional evidence to the Appeals Council, which found that the evidence did not show a reasonable probability that it would change the outcome of the decision and therefore did not consider it. The evidence consisted of two pages of dermatology medical records from 2012, five pages of mental health records from Eastover Psychological and Psychiatric Group dated May 27, 2015 through January 7, 2016, and 227 pages of mental health records from Blue Ridge Behavioral Healthcare, dated January 11, 2016 through June 6, 2017. R. 2. Amy also submitted eighty-four pages of mental health records from Blue Ridge Behavioral Healthcare from June 12, 2017 through August 21, 2017.

The Appeals Council declined to consider these records from after June 12, 2017 because they did not relate to the period at issue. Id. The magistrate judge found that the Appeals Council properly excluded the evidence because the records dated after June 7, 2017

were produced after the ALJ issued her decision on June 7, 2017and thus did not refer to the relevant time period.

The magistrate judge further found that the Eastover mental health records dated prior to the ALJ decision were properly excluded because they were mainly cumulative of other treatment notes in the record. The dermatology records were for a diagnosis of rosacea and a pruritic condition for which the doctor prescribed antihistamines, and would not have affected the decision because the conditions were not severe.

The Blue Ridge mental health records were new and not cumulative, and included evidence of inpatient psychiatric treatment in November 2015 and an April 2016 progress report showing that Amy required frequent redirection with regard to her attention and concentration. Nevertheless, the magistrate judge concluded that the longitudinal picture of the Blue Ridge records showed objective findings that regularly indicated that Amy was stable on medication, had fair memory, was oriented, and had intact or normal attention and concentration. The magistrate judge found that descriptions of Amy's mental health status were consistent with the conclusions of the ALJ and it was unlikely that the ALJ's opinion would have changed based on the records.

Amy objects, arguing that the Blue Ridge records show her inpatient psychiatric treatment in November 2015 and her worsening instability and need for frequent redirection during the relevant time period. Having reviewed the evidence, the court finds that it meets the Wilkins criteria in that it is new, material, and relates to the period on or before the date of the ALJ's decision.

In addition, the court finds that there is a reasonable probability that the additional evidence would change the outcome of the decision. The records show that Amy was hospitalized for a week in November 2015, due to increased depression and suicidal ideation. R. 28. In January 2016 she reported that the medications she started taking following that hospitalization were helping her. Id. However, on examination she was described as anxious, rocking back and forth, having pressured speech, scattered thought processes, was distractable/inattentive, and had both short and long term memory issues. R. 33-34.

On February 22, 2016 she was described as having some psychomotor agitation, a nervous mood/affect, circumstantial thought processes, paranoia related to a neighbor who was a police officer, limited to fair insight and judgment, fair recent and remote memory, and as requiring frequent redirection. R. 151. On March 9, 2016, Amy reported that while she was not suicidal, she could not guarantee her safety over the next few days. She was given an accelerated psychiatric appointment. R. 154. At the appointment she was found to have a somewhat blunted affect, although the exam was essentially normal. R. 156-157. However, at a meeting with her case manager the same day, Amy was described as having slightly pressured speech and an anxious mood. R. 158.

On April 11, 2016, Amy was noted to have some psychomotor agitation, circumstantial thought processes, paranoia related to her neighbor, limited to fair insight and judgment and requiring frequent redirection. R. 173. At a May 4, 2016 exam she was doing better, but still required frequent redirection. R. 192.

While it is not entirely clear that the new evidence would change the outcome of the decision, it may very well have affected the ALJ's determination of Amy's mental RFC,

particularly her ability to ability to concentrate, attend, and persist sufficiently to understand, remember, and carry out simple instructions in repetitive unskilled work. At the very least, the observations that she had circumstantial thought processes and needed to be redirected frequently should be considered by the Commissioner.

Accordingly, the magistrate judge's conclusion that the evidence would not have changed the outcome of the decision is not supported by substantial evidence and Amy's objection is **SUSTAINED**. Amy's case will be **REMANDED** for consideration of the new evidence. On remand the Commissioner is directed to review the new evidence as it relates to Amy's claims mental RFC as a whole.

## CONCLUSION

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ's decision is supported by substantial evidence based on the evidence before the ALJ. However, the court finds that the evidence submitted to the Appeals Council was new, material, relates to the period on or before the date of the ALJ's decision, and that there is a reasonable probability that it would change the outcome of the decision.

As such, the court **REJECTS** magistrate judge's report and recommendation and **REMANDS** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

An appropriate Order will be entered.

Entered: 09/09/2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge